IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

PAUL C. WRIGHT                                          PLAINTIFF

v.                      Civil No. 05-6034

TROY TUCKER, Sheriff;
BRIAN WEINGARNER,
Jailer; and JACKIE NEWBORN,
Jail Administrator                             DEFENDANTS

## MEMORANDUM OPINION

Before the court for decision is the defendants' motion for summary judgment motion (Doc. 23). To assist plaintiff in responding to the summary judgment motion, a questionnaire was propounded to the plaintiff (Doc. 26). Plaintiff's response to the questionnaire was filed as his response to the summary judgment motion (Doc. 27).

## BACKGROUND

Paul C. Wright was booked into the Clark County Detention Center (CCDC) on February 24, 2005. *Plaintiff's Response* (Doc. 27) (hereinafter *Resp.*) at ¶ 1. He was incarcerated because of pending criminal charges and because his parole had been revoked. *Id.* at ¶ 2. He remained incarcerated at the CCDC until April 29, 2005. *Id.* at ¶ 3.

To obtain medical care at the CCDC, an inmate had to write out a request that was then evaluated by Jackie Newborn, the jail administrator. *Id.* at ¶ 11(C). Inmates were taken to a near by clinic for treatment. *Id.* The CCDC had no doctor or nurse at the facility. *Id.* During Wright's incarceration at the CCDC, he filed grievances requesting medical attention. *Resp.* at ¶ 5.

On March 17th or March 18th,[1] Wright requested medical treatment because he had a knot on the back of his head. *Id.* at ¶ 11(B). Wright stated it hurt so badly he could not sleep or lay on his head. *Id.*

Wright states he informed each of the defendants of the severe pain he was in. *Resp.* at ¶ 6. Although he complained of pain, Wright states he waited patiently until he was finally taken to the doctor on March 22, 2005.[2] *Id.* at ¶ 11(A). When he was taken to the doctor, Dr. Blackmon, Wright maintains he was "misdiagnosed" with a "hair bump" or "in grown hair." *Id.* at ¶ 6, ¶ 11(A) & ¶ 11(D).

Wright was prescribed an antibiotic–a Z-pac. *Resp.* at ¶ 8 & ¶ 11(A). Wright maintains the antibiotic didn't help and his "head continued to swell." *Id.* at ¶ 8. Wright did, however, receive the antibiotic, a Z-pac. *Id.*

Wright was not prescribed any pain medication even though he told the doctor he was in severe pain. *Resp.* at ¶ 11(D). Wright did take over-the-counter pain medication "religiously." *Id.* at ¶ 9. Although he took the over-the-counter medication frequently and most of the time signed the log sheet indicating he had received it, Wright states the medication did not help with the pain. *Id.* Wright indicates there were times he was not allowed to sign the medication log. *Id.* He assumes this was because he had exceeded the amount of the over-the-counter medication that should be taken in a certain time period. *Id.*

On March 23rd when there was no improvement in his condition, Wright asked to see Sheriff Tucker. *Resp.* at ¶ 11(A). However, he was not allowed to see the Sheriff. *Id.* Wright

---

[1] March 17, 2005, was a Thursday. March 18, 2005, was a Friday.

[2] March 22, 2005, was a Tuesday.

AO72A
(Rev. 8/82)

then wrote a grievance but received no response. *Id.* On March 24th, Wright wrote another grievance but did not receive an answer. *Id.* On March 25th,[3] Wright spoke with Newborn and asked for medical attention. *Id.* Wright indicates Newborn stated he should wait until Monday and they would get him to a doctor then. *Id.* Wright also indicates Newborn said to have an inmate squeeze the puss out and Newborn gave him some gloves. *Id.*

Wright was asked whether he contended a custom or policy of Clark County resulted in his being denied adequate medical treatment. *Resp.* at ¶ 10. He replied: "Yes." *Id.* He stated he was always told by the jailers that they could not do anything without authorization from Jackie Newborn, the jail administrator, or the Sheriff, Troy Tucker. *Id.* When Wright talked to Newborn, he states he was referred to Tucker who Wright was never able to speak to. *Id.* Wright believes it was always an issue of the budget and the cost of medical care or of their believe he was not in pain as he claimed. *Id.* Wright states anyone could see his head was swollen. *Id.*

Wright indicates he was always told Sheriff Tucker would not send you to the doctor or emergency room. *Resp.* at ¶ 12. With respect to Jailer Brain Weingarner, on the evening of March 25th, Wright states he passed out and his cell-mate reported this to Weingarner. *Id.* According to Wright, Weingarner told Wright to "get up nothing is wrong with you." *Id.* Wright indicates Weingarner also said Sheriff Tucker said not to call the paramedics because Wright had just been taken to the doctor. *Id.* Wright states his family then "called the jail and reported to the county upon th[eir] arrival I was taken to the hospital." *Id.*

With respect to Newborn, Wright indicates he told her daily about his pain and she never gave him adequate attention and took his pain as a joke. *Resp.* at ¶ 12. Wright indicates

---

[3]March 25, 2005, was a Friday.

Newborn always said to wait or to get the inmates to squeeze the puss and he would be okay. *Id.* Wright states Newborn had the authority to send him to the doctor or the emergency room when he told her nothing had changed with his pain and his head was getting bigger. *Id.*

Because of the delay in his receiving medical attention, Wright states the hospital had to cut his head open and it left a "huge scar and a hole." *Resp.* at ¶ 13. Wright indicates staph infection ate the tissue in the back of his head and he was in pain like he had never felt. *Id.* Wright indicates he still gets a sharp pain at times and has a huge bump where the hole used to be. *Id.* Upon arriving at the Arkansas Department of Correction (ADC), Wright maintains he was given another antibiotic and informed the Z-pac "was not the right one for staph infections." *Resp.* at ¶ 8.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case

founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that each defendant acted under color of state law and that he or she violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). Mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

"The Eighth Amendment prohibits prison officials' cruel and unusual punishment of inmates . . . ." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001). *See also Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006)(the Eighth Circuit held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care and reasonable safety."). "This prohibition against cruel and unusual punishment has been interpreted as obligating prison officials to provide inmates in their custody with medical care. A prison official violates an inmate's right to medical care if his or her conduct amounts to a deliberate indifference to the prisoner's serious medical needs." *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006)(internal quotation marks omitted)(*citing Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Ruark v. Drury*, 21 F.3d 213, 216 (8th Cir. 1994), the court

-6-

AO72A
(Rev. 8/82)

noted that "an intentional delay in obtaining medical care for a prisoner who needs it may" violate the Eighth Amendment. For delay to violate the Eighth Amendment the Eighth Circuit has stated:

> the information available to the prison official must be such that a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate.

*Tlamka*, 244 F.3d at 633. *See also Ruark*, 21 F.3d at 216.

We believe there are genuine issues of material fact as to whether the defendants' delay in taking Wright to the doctor constituted deliberate indifference to his serious medical needs. Defendants have only supported their summary judgment with a copy of the complaint and the addendum to the complaint. The court has not been provided with Wright's medical records from the time he was incarcerated at the CCDC or any affidavits or materials stating how medical requests were evaluated in general or more particularly how it was determined when, and if, Wright needed to be taken to the doctor.

We certainly cannot say as a matter of law that no genuine issue of material fact exists as to whether defendants exhibited deliberate indifference to Wright's serious medical needs with respect to the period of delay between Wright's being taken to the doctor on March 22nd and his return for medical treatment on March 25th. Wright maintains that following his visit to the doctor on March 22nd his condition worsened, he complained repeatedly of severe pain, his head was swelling, and the medication was not working. Nothing in the record suggests the defendants contacted the doctor or other medical personnel and were told Wright could wait until the following Monday to be seen again. In view of Wright's continued complaints, we cannot

say as a matter of law that the three-day delay in obtaining treatment for Wright did not constitute deliberate indifference.

## CONCLUSION

For the reasons stated, the defendants' motion for summary judgment (Doc. 23) will be denied. A separate order in accordance with this opinion will be entered.

DATED this 20th day of February 2007.

/s/ *Robert T. Dawson*
HON. ROBERT T. DAWSON
UNITED STATES DISTRICT JUDGE

AO72A
(Rev. 8/82)